[SUNBURY, JUNE 15, 1829.]

## WILLIAMS, Executor of PENNOCK *against* CARR and another.

### IN ERROR.

Where a *Fieri Facias* has lain in the sheriff's hands six years, and is then re-turned *nulla bona*, such return will not preclude the admission of evidence to contradict it.

A court, in submitting presumptive evidence to the jury, may give its opinion on the weight of the testimony, but cannot preclude the jury from deciding for themselves.

The party who requests an opinion from the court, on the effect of testimony, cannot assign for error a compliance with his request.

ERROR to *Lycoming* county.

The facts of this case are so fully set forth in the opinion of the court, delivered by SMITH, J., that it is unnecessary to give any other statement of them.

*Anthony* and *Bellas*, who appeared for the plaintiffs in error, cited the following authorities:—*Phillips* v. *Hyde*, 1 *Dall.* 439. *Shewell* v. *Fell*, *3 Yeates*, 17, 18. 4 *Yeates*, 47. *Selin* v. *Snyder*, 7 *Serg.* & *Rawle*, 172. *Blythe* v. *Richards*, 10 *Serg.* & *Rawle*, 261. *Hunt* v. *Breading*, 12 *Serg.* & *Rawle*, 37. *Diller* v. *Roberts*, 13 *Serg.* & *Rawle*, 60. 6 *Com. Dig. Return, G.* 4 *Mass. Rep.* 478. 11 *Mass.* 163. 20 *Johns.* 49. 4 *Am. Dig.* 66, *pl.* 713. 1 *Pick.* 271.

*Greenough*, for the defendants in error, cited, 2 *Tid. Pr.* 1047. 10 *Mass. Rep.* 101. *Weidman* v. *Weitzel*, 13 *Serg.* & *Rawle*, 96.

The opinion of the court was delivered by

SMITH, J.—*George Pennock*, deceased, in his lifetime obtained, on the 5th of *December*, 1798, a judgment in the Court of Common Pleas of *Lycoming* county, for one hundred and thirty-nine pounds twelve shillings and nine and a half pence, with interest from the 12th of *April*, 1798. A *Fieri Facias* was issued thereon, returnable to the *September* Term, 1799, and was returned "*nulla bona.*" An *Alias Fieri Facias* issued to *February* Term, 1800, to which the sheriff, on the 12th of *February*, 1806, returned "*nulla bona.*" To the *September* Term, 1805, a *Pluries Fieri Facias* was issued, and levied on three hundred acres of land in *Bald Eagle*, belonging to the defendants. This land was afterwards sold by the sheriff on another judgment; but before the money was appropriated to the creditors of the defendants, the latter moved the court, that the judgment of *George Pennock's* executor, of the 5th of *December*, 1798, above-mentioned, be opened, so far as to let them plead and try what sum, if any, was due to the plaintiff in that judgment. On the 3d of *September*, 1825, the court granted this motion. The defendants pleaded payment with leave, &c. Re-

(Williams, Executor of Pennock, *v.* Carr and another.)

plication, *non solverunt,* issue and rule for trial. The trial came on in *December*, 1825, and a verdict was found for the plaintiff for two hundred dollars and ninety-one cents, upon which judgment was rendered by the court. On this trial, the plaintiff proceeded to give in evidence his judgment of the 5th of *December*, 1798, and the first two writs of *Fieri Facias,* above-mentioned, with the sheriff's returns thereon, and rested.

The defendants then offered in evidence a judgment of *Johnson* against *Griffith Carr* and *George Carr, September* Term, 1798, for one hundred and nine pounds nineteen shillings and four-pence, together with a *Fieri Facias* issued thereon, returnable to *December* Term, 1799, and returned "levied on grain in the stack subject to former levies;"—an *Alias Fieri Facias* to *December* Term, 1800, returned, "levied on three stacks of wheat, and one yoke of oxen; the oxen subject to former levies;"—a *Venditioni Exponas* to *February* Term, 1801, returned, "sold to the amount of sixty-six dollars," returned *February*, 1806;—an *Alias Venditioni Exponas* to *May* Term, 1801, returned, "sold, and proceeds appropriated to prior levies;"—a *Fieri Facias* to *February* Term, 1805, *pro residuo,* returned, "levied on two horses;"—a *Venditioni Exponas* to *April* Term, 1805, to which there was no return;—an *Alias Venditioni Exponas* to *December* Term, 1805, returned, "sold to the amount of forty-seven dollars;"—a *Capias ad Satisfaciendum* to *February* Term, 1806, returned, "*C. C;*"—and also, the following receipts, admitted to be in the hand-writing of *J. Cummings,* sheriff, viz. Receipt, 21st of *January*, 1801, of *John Cummings,* sheriff, for sixty-nine dollars, for three horses to *William Martin,* purchased by him as the property of *G.* and *G. Carr.*—Receipt of the 23d of *June,* 1801; same to *John Fleming,* Esq. for one hundred and thirty-one dollars, in full of the purchase of a mare, sold as the property of the same.—Receipt of the same date; same to *Jesse Hunt* for twenty-five dollars, in part of two horses, property of the same. Receipt of the 2d of *February*, 1801; same to same, for fifty-three dollars and fifty cents, in full for his purchase of *Carr's* property. —Receipt of the 7th of *May*, 1801; same to *M'Laughlin* for sixty-six dollars for property of *Carr's,* at sheriff's sale; and also, a receipt of the 8th of *May*, 1800, in the receipt book C. of *J. Cummings,* of *Charles Hall,* for three pounds, being the amount of attorney's fees in this case.

The above were offered by the defendants, in order to show, that while the aforesaid *Fieri Facias* of *George Pennock* against *Griffith Carr* and *George Carr,* to the *February* Term, 1800, lay in the hands of the sheriff, and when there was no other *Fieri Facias* in his hands, several executions were put into the sheriff's hands, on which levies were made, subject to former levies; that the property on writs of *Venditioni-Exponas* in the several cases, was sold and returned as applied to prior levies; that there was no prior levy,

(Williams, Executor of Pennock, *v.* Carr and another.)

unless one had been made on *Pennock's Fieri Facias* of *February,* 1800; and, further, on the return of "sold, and proceeds appropriated to prior levies," made on No. 9, of *February,* 1801, and No. 27, of *May* Term, 1801, to prove by the said receipts of sheriff *Cummings* to persons who purchased at said sales, that the property sold amounted to above three hundred and forty dollars; and further to show, by the receipt of *Charles Hall,* Esq., above stated, the payment of his fees in this case.

. To this evidence the plaintiff objected, but the court admitted it, and sealed a bill of exceptions. Other evidence was afterwards given by the defendants; a second bill of exceptions was sealed, and various errors have been assigned as existing in the charge of the President; but, in the discussion before this court, two errors only have been insisted on. Of these, the *first,* was the admission of the evidence contained in the foregoing offer.

1. The ancient mode of relief against unjust and oppressive proceedings upon a legal and regular judgment, was by the writ of *Audita Querela,* which seems (says *Blackstone,* 3 *Com.* 406,) to have been invented, lest in any case there should be a defect of justice, where a party who has a good defence, is too late to make it in the ordinary forms of law. It lay wherever a defendant had paid the debt to the plaintiff without procuring satisfaction to be entered on the record, or has matter of fact or in writing, to avoid the execution, and no other means to take advantage of it. 1 *Com. Dig. Aud. Quer. A.* 647. In such cases, the defendant was aided by this writ, which, in the nature of a bill in equity, lay upon good matter of discharge occurring since the judgment, to relieve him against the oppression of the plaintiff. The modern practice of granting relief upon motion, has been found to be more convenient, and has accordingly superseded the writ of *Audita Querela;* being adopted in all cases, where the defendant would have been entitled to relief upon that writ. We consider the present case as presenting a proper occasion for the interposition of the court below; and the direction of that court, in referring the question of what, if any thing was due, to the decision of a jury, as entirely unexceptionable. This offer of the defendants was admissible for the purposes stated. However conclusive the sheriff's return may be in an action against him, or in an action between third persons, where the return is regular, (and we are far from thinking, that the authority of this official act should in those instances be diminished,) it would be attended with great oppression, to give the same weight to the loose and irregular returns which are often made by that officer. The intention of the law is, that the writ of execution should be returned to the next term—such is the exigence of the writ itself, and the sheriff ought not to neglect it. But the practice is, in most counties, exceedingly lax in this respect. In many cases, the writ is not returned at all; in others, not until the lapse of years after its *exit,* when the sheriff, considering the matter as settled, or forgetting the real transaction,

(Williams, Executor of Pennock, *v.* Carr and another.)

endorses a return *pro forma.*  In the case before us, the *Alias Fieri Facias,* No. 14, to *February* Term, 1800, was retained in the sheriff's hands for six years, and then returned *nulla bona.* Upon the strength of such a return, the court were asked to exclude the evidence offered by the defendants, going to show, that whilst that writ remained in the sheriff's hands, he sold their property and applied the proceeds towards the payment of the plaintiff's judgment.   In *Weidman* v. *Weitzel,* 13 *Serg. & Rawle,* 96, this court determined, that a sheriff's return to a *Fieri Facias,* made two years after the proper time, and one year after a suit brought, in which its effect was material, was unworthy the name of a regular legal return, by which the party should be concluded.

We think the decision of the Court of Common Pleas upon this offer was correct, and, therefore, the first assignment of error is not sustained.

2. Among the points presented to the court, to which their answers were requested, was the following:—

" 4th point.—Whether the indirect evidence given by the defendants, of proceedings in other judgments, afforded any legal presumption, that any of the debt or damages had been paid to the plaintiff, in opposition to the direct and positive evidence of the judgment and proceedings in this case?"

To which, the court gave in charge to the jury the following answer:—

" 4th answer.—It is evidence of the property of *Carr's* being sold, which might be appropriated towards *Pennock's* execution; it being prior to the execution of the *Johnsons,* does form a strong presumption of payment, and sheriff *Cummings,* who held these executions, states in his evidence, that it is his impression, that he paid money to the attorney of *Pennock* on account of that judgment, but that he is not certain."

This answer constitutes the other error on which the plaintiff insists that the judgment should be reversed.

The court having properly admitted the evidence, had passed it to the jury, that they might ascertain its force; it was peculiarly the province of the latter, to determine the question submitted in this *fourth* point; provided, the words "any legal presumption" be taken in that sense, in which alone it was proper to use them, after the admission of the evidence referred to, (that is to say, in the sense of *"any presumption, or proof;"*) and in which the court appear to have understood them.  The court may, with propriety, give their opinion to the jury upon a question of fact; nor will this court reverse for error in such opinion, unless it clearly appear that the jury were thereby precluded from deciding for themselves.  *Riddle* v. *Murphy,* 7 *Serg. & Rawle,* 230.  The same remark is applicable to the opinion of the court on the weight of testimony.  But the plaintiff having requested their opinion,

(Williams, Executor of Pennock, *v.* Carr and another.)

cannot complain that the court proceeded to give it; and, from an examination of the evidence, as it appears in this record, we can discern nothing wrong or erroneous in their estimate of its value in their answer, which they submitted to the jury in reply to his proposition. We are, therefore, of opinion, that the plaintiff has also failed to sustain this assignment of error, and that the judgment should be affirmed.

Judgment affirmed.