# Staunton

STATE FARM FIRE INSURANCE COMPANY V. CECIL RAKES.

September 8, 1948.

Record No. 3357.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Staples
and Miller, JJ.

*Woods, Rogers, Muse & Walker* and *Andrew S. Coxe,*
for the plaintiff in error.

*James L. Warren,* for the defendant in error.

STAPLES, J., delivered the opinion of the court.

The State Farm Fire Insurance Company, plaintiff in
error (defendant below) complains of a judgment rendered
against it in favor of the plaintiff below, Cecil Rakes, the
insured in a fire insurance policy issued to him by the
defendant.

The question presented is a narrow one. The policy
insured plaintiff's personal property and household goods
while located in a certain building but not elsewhere. They
were destroyed by fire while in plaintiff's home in another
county to which they had been removed; therefore, the
loss is clearly not within the protection afforded by the
language of the policy. But the plaintiff claims that the
defendant is estopped by the conduct of its agent to deny
liability.

In view of the verdict of the jury in favor of the plain-
tiff, the following facts must be taken as established:

E. E. Woodson was the general agent for three affiliated
companies—The State Farm Life, State Farm Fire and State
Farm Mutual Automobile Insurance Companies. His office
was located in the town of Narrows, Virginia, and his
insurance business was restricted to the representation of
these affiliated companies and no others.

On November 5, 1945, the plaintiff was the owner of the
personal property here involved which was then stored in
a dwelling house on North View Street, in the town of
Narrows. On that day he went to the office of defendant's
said agent, Woodson, and made application for a fire insur-
ance policy in the sum of $2500 to cover the personal
property so stored. At the time of making the application,

he informed the agent that the property was stored at the time in Narrows, but that he intended to move it to Dickenson County as soon as he could get possession of a home which he had purchased there. For that reason he desired a policy in which the coverage would be transferable to the changed location. The company's standard form of policy was issued covering the property while located in said building "but not elsewhere."

The plaintiff also had purchased an automobile liability policy from one of the affiliated companies through the same agent. The vehicle originally covered by the policy having been sold and a new one acquired, he had had the coverage transferred to his new car by verbally requesting the agent to make the transfer.

On February 25, 1946, the plaintiff loaded the insured property in a truck for the purpose of moving it to his home in Dickenson County. As he was leaving Narrows, he stopped by the office of the agent, Woodson, and informed him of the fact that he was moving the property covered by the policy to his new home and requested the agent to transfer the coverage to that location. The agent made a memorandum of the change in location, and the plaintiff understood that the transfer was thus made, or would be made, by the agent.

About two months later, on April 24, 1946, the plaintiff's home was destroyed by fire, along with all of the personal property covered by the policy. On the day following the fire, the plaintiff went to the office of the agent, Woodson, at Narrows, and notified him of the destruction of the property, whereupon the agent informed him that he had never notified the company of the removal to the new location. The agent also told the plaintiff that he knew he had moved, but that he had neglected to have the insurance transferred and said "it is just negligence on my part that it was not transferred." This was the first intimation that the plaintiff had had that the coverage of the policy had not been transferred to the new location.

Woodson, being a general agent for Giles County, cus-

tomarily exercised the authority to insure property on behalf of his principal and made the same binding from the time of the application. It was his custom, also, to make transfers of coverage on furniture and personal property in case of a change of residence, without any lapse in the protection during the time the transfer was being approved by the company. In such transfers, it was customary for the agent to have a rider issued from the home office indicating the permission of the company for the change of location.

In order to bring the position of defendant's counsel with respect to the proposition of law they contend for into clear focus, the following is quoted from their opening brief:

"We will concede that the rule is now well established in Virginia that the conditions in a fire insurance policy may be waived either by the insurer or his lawful agent in the absence of limitations on the authority of said agent known to the insured. *Virginia Fire, etc., Ins. Co.* v. *Richmond Mica Co.* (1904), 102 Va. 429, 46 S. E. 463, 102 Am. St. Rep. 846, and subsequent cases. That case is also authority for the proposition, which we do not think is controvertible, that an insurance company, in order to successfully assert that its agent has exceeded its powers in waiving conditions of a policy, the assured must have actual notice of the limitations placed on the agent's powers, either by having his attention called to the stipulation of the policy containing such limitations, or otherwise. The constructive notice afforded by the circumstances that the policy contains the limitation is insufficient.

"We cannot dispute the rule that has been affirmed in Virginia that knowledge on the part of the agent of facts rendering the policy voidable or of a breach authorizing a forfeiture is imputed to the company for the purpose of effecting a waiver. *Lynchburg Fire Ins. Co.* v. *West* (1882), 76 Va. 575, 44 Am. Rep. 177; *National Union Fire Ins. Co.* v. *Burkholder* (1914), 116 Va. 942, 83 S. E. 404.

"It is imperative, however, that the limitations on the authority of the agent be brought to the knowledge of the

insured. *Royal Ins. Co.* v. *Poole* (1927), 148 Va. 363, 138 S. E. 487.

"We earnestly contend, and shall cite learned authorities to support our contention, that the location or situs of the goods or property insured is not a condition of the policy that can be waived but is the heart, the very essence, of the contract. We believe that the location of the goods insured is beyond the application of the doctrine of waiver or its oft confused brother, estoppel."

The question thus posed by counsel for the defendant was appropriately raised by exceptions to instructions granted for the plaintiff and those refused on behalf of the defendant.

In support of this position, the defendant relies strongly upon *Summers* v. *Oakfield Town Mut. Fire Ins. Co.*, 245 Wis. 40, 13 N. W. (2d) 518. In that case the policy of a town mutual company which was issued to the assured covered the property while located and contained in the town of Byron, Wis., in the building as described therein, *but not elsewhere.* The charter of the company limited the territory within which it was authorized to do business to one county and certain towns in another county. The insured moved the property from its location at the time it was insured in the town of Byron to a town in Racine County, which was outside of the territory within which the mutual company was authorized by its charter to engage in business. The insured claimed, and the trial court held, that the mutual company had knowledge of the fact that the property in question had been removed to its new location where it was destroyed, and that with such knowledge it had continued to collect assessments from the insured. This knowledge of removal coupled with the continued collection of assessments, the trial court had held, estopped the company to deny that the policy was continued in force. Upon appeal it was held that, under the facts in the case, there was no question of waiver or estoppel, but that the liability of the insured was to be determined by an interpretation of the policy itself. It was, therefore, concluded

that, since the terms of the policy restricted the coverage to the designated location, the loss was not within the risk contracted for and there was no liability upon the insurer. The mere knowledge of the removal and the collection of assessments was held not sufficient to constitute a waiver or estoppel.

But the facts in the case at bar go further than a mere knowledge by the insurer that the location of the insured property had been changed. Here the plaintiff expressly notified the agent that the property was being taken to his home in Dickenson County, and at the same time requested the agent to take such action as might be necessary to transfer the coverage to the new location. And the evidence was sufficient to permit a finding by the jury that the agent, Woodson, admitted that his failure to take such necessary action was due to his own negligence. The jury might also have found that the plaintiff was lulled into a sense of security by the acquiescence of the agent in his request for the transfer, and for that reason relied upon same and failed to provide other insurance protection. Thus, the facts here appear to be materially different from those in the *Summers Case.*

The defendant also relies upon the case of *Fidelity Phenix Fire Ins. Co.* v. *Raper,* 242 Ala. 440, 6 So. (2d) 513, in which it was held that the insurance of a building against fire loss *while occupied* as a dwelling by the owner was a limited coverage and could not be extended by waiver or estoppel to cover a risk *while not so occupied.* The same court a few months later, however, declined to apply that doctrine to a policy covering personal property *at a specific location.*

In *Bankers Fire, etc., Ins. Co.* v. *Draper,* 242 Ala. 601, 7 So. (2d) 299, 302 it was held that a coverage of personal property "while located and contained as described herein and not elsewhere" was not a limited coverage but a forfeiture condition which could be waived. And the court distinguished the rule thus applied from that previously followed in the *Raper Case, supra,* relied on by the defendant.

The case of *Rosenthal* v. *Insurance Co.*, 158 Wis. 550, 149 N. W. 155, is also relied on by the defendant. In that case, however, the insured did not contend that there was any conduct on the part of the insurer or its agent which would constitute a waiver or estoppel of the provision of the policy which covered the livestock while in a designated building and not elsewhere. The insured contended that the insurer knew or should have known that occasions would arise from time to time which would make it necessary to house the livestock in a different building, and, therefore, the provisions of the policy should be given a broad interpretation to cover such contingencies. The court held, however, that the language of the policy did not permit any such interpretation, and, therefore, the horses, when stabled in a different location, were not within the protection of the policy.

Other cases are cited by the defendant bearing upon the rules to be applied in interpreting contracts of insurance containing the standard provisions prescribed by statutes. We do not consider these cases applicable to the facts now before us. Clearly here the terms of the policy itself are not broad enough to extend to the plaintiff's property after it had been moved to his home in Dickenson County. The only question we have to consider is whether these provisions have been waived, or whether the insurer is estopped to rely on them.

We think the great weight of authority is contrary to the doctrine laid down by the Wisconsin court in the *Summers Case, supra*, which held that the restriction of the coverage to the property while located at a specified place was such an essential and integral part of the agreement itself that it could not be waived or the coverage extended to a different location by estoppel.

The general rule is thus stated in 45 C. J. S., section 674, at page 619: "The company may waive, or be estopped to rely on, provisions or conditions in a policy of fire insurance relating to location of the property at a specified place; * * *"

In Appleman's Insurance Law and Practice, Vol. 17, section 9569, page 261, *et seq.*, it is said that, "Although removal of personalty from the insured location may constitute a breach of a policy avoiding liability on the part of the insurer, such conditions of forfeiture are for the company's benefit and may be waived by it, or it may be estopped to rely thereon."

The foregoing general statement is followed by an elaborate discussion of the subject and citations of authority.

*Delaware Ins. Co.* v. *Wallace* (1913), (Tex. Civ. App.), 160 S. W. 1130, held that, where the insured telephoned the insurance agent requesting a change in the policy so as to cover the place to which the property was to be removed and where the loss occurred, the doctrine of estoppel applied and the insured was entitled to recover even though no transfer had actually been endorsed on the policy.

In *Cooper* v. *German-American Ins. Co.*, 96 Minn. 81, 104 N. W. 687, the insurer's agent orally agreed to make an endorsement upon the policy permitting a transfer of the goods insured to another location, and the court held that under these circumstances, although the endorsement was not actually made, the policy was, nevertheless, continued in force. It was further held that the fact that the rate of insurance was greater at the new location did not relieve the company of obligation under the policy, and that it was the duty of the agent to ascertain what the increased rate was and to make demand upon the insured therefor.

In *Shutts* v. *Milwaukee Mechanics' Ins. Co.*, 159 Mo. App. 436, 141 S. W. 15, in which the insured's goods were removed to another location contrary to the provisions of the policy, it was said that, if the insurer knew of the changed location and expressly or impliedly assented thereto, the violation of the policy was waived, and that it was not necessary for the plaintiff to allege or prove that a new contract of insurance resulted from such knowledge or implied assent to the removal.

*Henslin* v. *United States Fire Ins. Co.*, 152 Wash. 637, 278 P. 702, held that a provision in a fire insurance policy,

that goods are covered only while they remain in the place where they were when insured, may be waived by the insurer, although under the facts in that case the evidence was held insufficient to constitute a waiver.

Additional authorities to the same general effect are cited in the margin.[1]

This court has never had occasion to pass upon the specific question here presented. However, the recent case of *Virginia Auto Mut. Ins. Co.* v. *Brillhart*, 187 Va. 336, 46 S. E. (2d) 377, involved the same principle. There it was held that when the agent who issued an automobile liability policy was present at the time and knew that the vehicle covered was being sold, and that both the purchaser and seller understood that the policy followed the car and would thereafter protect the purchaser against liability, it was the agent's duty to endorse, or have endorsed, on the policy the necessary provision to carry out the intention of the parties; or, if this was not done, the agent should have cancelled the policy and returned the unearned premium. The agent having done neither, we held that the company either waived the failure of its agent to endorse the transfer on the policy, or was estopped to rely thereon.

We think the same principle is applicable to the case at bar. Certainly, it cannot be said that a transfer of a policy from one insured to another is not just as clearly a change in the heart or essence of the contract as a transfer of the coverage of personal property from one location to another. With respect to the increase in the rate which may apply to the new location, it is the duty of the agent

[1] *Yeager* v. *St. Paul Fire, etc., Ins. Co.* (1942), (Tex. Civ. App.), 166 S. W. (2d) 939; *Bemisdarfer* v. *Farm Property Mut. Ins. Ass'n*, 217 Iowa 770, 252 N. W. 551; *Powell* v. *Continental Ins. Co.*, 97 S. C. 375, 81 S. E. 654; *Continental Ins. Co.* v. *Buchanan*, 32 Ky. Law Rep. 1298, 108 S. W. 355; *Schlee* v. *New Zealand Ins. Co.*, 238 Mich. 112, 213 N..W. 458; *Kor* v. *American Eagle Fire Ins. Co.*, 104 Neb. 610, 178 N. W. 182; *Pollock* v. *German Fire Ins. Co.*, 127 Mich. 460, 86 N. W. 1017; *First Nat. Bank* v. *Home Ins. Co.*, 274 Pa. 129, 118 A. 17; *Cummings* v. *National Fire Ins. Co.*, 251 Mich. 105, 231 N. W. 61; *Aliff* v. *Atlas Assur. Co.*, 102 W. Va. 638, 135 S. E. 903.

to ascertain the correct rate and, if higher, demand payment of the difference.

Under the established facts here before us, defendant's agent, Woodson, owed the plaintiff the duty either to cancel the policy and return the unearned premium or have the necessary endorsement placed on the policy transferring the coverage to the new location. If the policy had been cancelled, the plaintiff would have known he no longer was protected thereby and would have been afforded an opportunity to obtain a new policy from another agent. We think the defendant is estopped to interpose, as a defense to its liability, the failure of its agent to perform this duty.

It follows that the judgment complained of is affirmed.

*Affirmed.*