**BOYKIN & TAYLOE, Inc. v. COLUMBIA FIRE INS. CO.**

No. 977.

United States District Court
E. D. Virginia, Norfolk Division.

Feb. 10, 1950.

648

month, the exact location of all property covered hereunder, the total value of such property at each location and all specific insurance in force at each of such locations on the last day of each month. At the time of any loss, if the insured has failed to file with this Company reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values, filed prior to the loss."

According to his affidavit supporting the plaintiff's motion, defendant's general agent commended to the plaintiff a monthly reporting form of fire policy for the latter's stock and merchandise, and at the same time gave his assurances that it would involve no burden upon the insured not found in the straight premium type of insurance. This agent wrote all of the insurance carried by the plaintiff and was fully informed each month of the entire amount of insurance held by the plaintiff as well as the location of the protected property. However, this controversy does not touch upon the factors of other insurance or location. The agent gives an unquestioned account of the conduct of the parties under the terms of the policies, from the inception of the insurance until the loss.

Charles L. Kaufman, Norfolk, Virginia, Hamilton Plack, Norfolk, Virginia, for plaintiff.

Tazewell Taylor, Jr., Norfolk, Virginia, W. R. Ashburn, Norfolk, Virginia, for defendant.

BRYAN, District Judge.

Cross motions for summary judgment present the question whether the defendant insurer through estoppel or perhaps waiver is barred from relying upon the value reporting clause of its monthly reporting fire insurance policy, issued to the plaintiff, to limit the latter's recovery for loss to "not more than the amounts included in the last report of values", that clause reading: "9. Value Reporting Clause. It is a condition of this policy that the insured shall report to this Company not later than thirty (30) days after the last day of each

On May 6, 1947 he issued to the plaintiff defendant's policy in the sum of $8,000 for one year, on the stock and merchandise of Boykin & Tayloe, Inc., the plaintiff, at 240 W. 24th Street, Norfolk, Virginia; on August 1, 1947 the first policy was cancelled and in its place he issued a new policy with the defendant, Columbia Fire Ins. Co., for $14,000, immediately increased to $20,000, of the monthly reporting type—the first policy of its kind ever written for the plaintiff. The expiration date of this policy was August 1, 1948 and it contained the quoted value reporting clause.

The agent handled this policy in the same manner as he had for twelve years handled every one of the numerous similar policies he had issued for Columbia. He would procure from the insured the necessary information as to the monthly values of the property covered, prepare the re-

ports required by the value reporting clause of the policies, and forward them to the company. The insured in no instance made any such report to the company and was never furnished blanks for the purpose by the insurer or its agent, the reports always being made to the defendant by its agent. Blank report forms were provided by the company for the agent, and the company recognized and regularly accepted this method of reporting. The practice of the agent, acquiesced in by the insurer for the twelve-year period, was to accumulate the information for several months and forward it to the defendant at one time. Sometimes, after a lapse of reports for several months, the company would send the agent a reminder, a card so arranged as to receive the necessary data. At the end of an insurance year it would urge upon the agent a prompt forwarding by him of all delinquent reports, in order to compute the final premium.

So it was with the policies here. No report was sent for August 1947. For September, October, and November the agent prepared, signed the name of the insured, and sent all three reports simultaneously; for December, 1947 and January, February, March, April and May, 1948 they were likewise prepared and signed by the agent but not forwarded until after May. The June and July reports went in some time in September, similarly signed in the name of the insured by the agent. In September, 1948, the company accepted these reports for the purpose of determining the amount of its liability or insurance in force in each of the months during the year of August 1, 1947 to August 1, 1948. The premium was computed from them, and on October 8, 1948 the defendant refunded to the plaintiff the excess of the provisional premium over the earned premium so calculated.

The policy expiring August 1, 1948 was, by the policy in suit, renewed in the same amount for a year commencing on that date and otherwise upon identical terms. Under it the parties, including the agent, followed the same course of conduct as previously. The only report made before

the fire was the one for the last day of August 1948. It was dated September 2, 1948, signed and sent by the agent, and received in the office of the company on October 1, 1948, showing an inventory value of $12,539.54.

Fire on March 18, 1949 destroyed the entire stock and merchandise of the plaintiff at the location named in the policy. Afterwards, but during March, reports for all months were filed. The record does not affirmatively disclose whether the agent had obtained before the fire the information which he reported after the fire. It is conceded that on the last day of the month of February, the fair inventory value of the property was $24,015.90 and on the last day of January $16,591.40.

The maximum provisional liability under the policy was $20,000, for which the provisional premium had been paid in advance. The plaintiff moves for judgment for the amount of the policy, and the defendant moves that no judgment be granted in excess of $12,539.40, the value entered on the last report received at the office of the company, that is, on October 1, 1948 for August 31.

The Court thinks that judgment should go for the plaintiff in the sum of $20,000.

■ Clearly the defendant is equitably estopped to plead, and has irrevocably waived, the reporting requirements of Clause 9 of its policy. Its course of conduct from August, 1947 until the fire in March, 1949 demonstrates that it did not consider a report under Clause 9 as indispensable to fix the amount of the insurance protection in force for the property on hand. It led the insured to believe, and to rely upon the belief, that the true value of the property at the end of the month would unconditionally be the measure of the insurance granted by the policy for the next month, and that the duty of making reports was its agent's. It did so with full knowledge.

For the year ending August 1, 1948 the company had confirmed to the insured the correctness of the course of conduct which its agent had pursued; it settled the final

premium on spasmodic reports, on reports not furnished by the insured, and on reports made out by its agent—sometimes on the company's reminder cards which had not been sent to the insured but to the agent. The very report upon which the company now relies was not the insured's but the agent's. Again, computing the first year's premium from the agent's reports was a plain and intended admission that the company had a liability each month in the amount of the inventory set forth in the report relating to that month. Otherwise it would not have charged a premium for coverage in that amount for that month. The computation thus accepted the reports as fixing the amount of liability for each month according to the date for which the report was made, not according to the date it was received. In ascertaining the extent of its liability each month, the insurer should not be allowed to reject after a loss a method of reporting values which it had adopted over a period when there was no loss.

■ We think too that the company has waived the "Waiver provisions" of the policy—that "no * * * waiver of any provision (shall) be valid, unless granted herein or expressed in writing added hereto".

■ This action is here under the diversity jurisdiction of the Federal court. Its decision is controlled by the law of Virginia. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. We have no doubt that our conclusions are in accord with the decisional and statute law of Virginia. The Court does not overlook Peters v. Great American Ins. Co., 4 Cir., 177 F.2d 773. There the Court held our question to be one of coverage and sharply pointed out the distinction recognized in South Carolina, whose law it was enunciating, that the doctrine of waiver is not applicable to coverage but only to forfeiture provisions of a policy. In this it is abundantly supported not only by the State decisions it cites but also by the Federal courts in those States espousing that differentiation. Standard Acc. Ins. Co. v. Roberts, 8 Cir., 132 F.2d 794,

798; Van Meter v. Franklin Ins. Co., 9 Cir., 164 F.2d 325, 327. But the Supreme Court of Appeals of Virginia has refused so to limit the play of waiver or estoppel in this State.

For the latter Court Justice Eggleston squarely and fully dealt with this question in Virginia Auto. Mut. Ins. Co. v. Brillhart, 1948, 187 Va. 336, 46 S.E.2d 377, 380. He held the insurer to have waived, by its conduct, a provision of "coverage"—that assignment of interest under the policy should not bind the company until its consent was endorsed thereon. He concluded that the insurer by its waiver extended protection to one, as an insured, not named in the policy or included by its terms. The justice said, "The problem presented is one of *coverage* and not of *forfeiture*." Indeed there was no applicable forfeiture clause in the policy. We need not further cite Virginia authorities because the opinion in the Brillhart case is a complete compendium of the Virginia doctrine and decisions. This decision was followed and approved in State Farm Fire Ins. Co. v. Rakes, 1948, 188 Va. 239, 49 S.E.2d 265, 4 A.L.R.2d 862, which passed on another phase of insurance coverage—location of insured personalty. Waiver and estoppel were there upheld. It is interesting to note that "location" is one of the items embraced in the reporting clause of our policy.

■ Virginia holds that to the insured the agent *is* the insurance company. "What he knows they know. What he does, they do." Brillhart case, supra, 46 S.E.2d 377, 381. The cited case is authority too for the proposition that the waiver clause is waivable. It cannot be successfully asserted that in the present controversy the agent was acting for and as the representative of the insured, for by statute in Virginia he is conclusively made the company's agent. Va.Code, § 4222(d).

Anent the failure of the insured in the instant action to file reports, the reasoning of Schenley Distillers Corp. v. U. S. Fire Insurance Co., 2 Cir., 90 F.2d 633, 635, a somewhat similar case, is apposite and in accord with the Virginia rule: " * * * the insurer was bound to protest; for

there was really an implied contract that he should, at least so long as the insured was acting in good faith. * * * The trouble to the insurer was very slight of protesting that the delay was imperilling its own interests; the consequence to the insured of not doing so was very grave, when the stocks were increasing. Most insurers would give such a warning; most insured would expect one; ordinarily both would understand that unless one was given the time to file ran on. Therefore it did run on."

We do not think that sec. 4222 of the Va.Code is determinative here. Its pertinent subparagraph (c) was in effect at the time of the Brillhart case and did not there affect the result.

■ A point not argued, but of importance in the opinion of the Court, is the question whether the controlling value is the value of the insured property on the last day of February ($24,015.90) or the last day of January ($16,591.40). It has been held, in the absence of waiver or estoppel, that the reporting period does not extend beyond the loss, and therefore unless a report is made between the last day of the month preceding the month of the fire and the date of the fire, the amount of the insurance is fixed by the amount reported for the second month preceding the month of the fire. Camilla Feed Mills v. St. Paul Fire & Marine Ins. Co., 5 Cir., 177 F.2d 746, 749; Wallace v. World Fire & Marine Ins. Co., D.C., 70 F.Supp. 193, affirmed, 9 Cir., 166 F.2d 571. The Court feels that the waiver or estoppel in our case bars the enforcement of Clause 9 and gave the insured, without action on his part, insurance to the actual value of his inventory, not exceeding $20,000, on the last day of each month. There is present no intimation of fraud or intent to reduce the premium through understatement of values. The insured should be allowed to recover upon the inventory value of February 28, 1949.

An order will be entered denying the defendant's motion but granting the plaintiff's, with judgment for the plaintiff in the sum of $20,000 and interest from May 13, 1949 at 6% until paid, plus costs.